IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04cv274

| | |
|---|---|
| MD PRODUCTS , INC <br> d/b/a Golf Shop Ltd., <br>               Plaintiff, <br><br> vs. <br><br> CALLAWAY GOLF SALES COMPANY <br>               Defendant. | **MEMORANDUM AND ORDER** |

Plaintiff has brought suit against Defendant Callaway Golf Sales Company for violation of North Carolina antitrust laws and related statutes. The action was instituted in the Superior Court of Mecklenburg County, North Carolina, and was removed to this Court pursuant to 28 U.S.C. § 1332. (Doc. No. 1). Defendant has moved for summary judgment (Doc. No. 13) on all of the plaintiff's claims.[1] For the reasons stated below, the Court **GRANTS** the defendant's motion.

## Factual Findings

The Court finds the following facts in a light most favorable to the plaintiff. In 1998, Michael K. Murray incorporated MD Products, the plaintiff in the present case. In the same year, the plaintiff purchased "The Golf Shop, Ltd.," a discount retail golf store, located in Charlotte, North Carolina. In 1999, the plaintiff purchased a second discount golf store in Huntersville, North

---

[1] Michael K. Murray, the sole shareholder of MD Products, was the original plaintiff in this action. On August 1, 2006, the Court ordered substitution of the real party in interest, namely MD Products. (Doc. No. 40). MD Products filed an Amended Complaint within the requisite time period. (Doc. No. 41).

1

Carolina. For two and one-half years of operation, the plaintiff was free to sell Callaway Golf products at discount prices and in any manner, i.e., the internet, newspaper, etc. On January 25, 2001, Callaway instituted its New Product Introduction Policy (NPIP) because of concerns that retailers were using discounted Callaway products to attract customers, then using a bait-and-switch tactic to steer the customer towards a cheaper brand said to be comparable to Callaway. Callaway, therefore, determined to use only full-price retailers, not discounters. The NPIP provided that Callaway would sell its new products only to retailers that sold directly to golfers (not on the "gray market"), that did not discount the products, that did not engage in bait-and-switch selling, that did not disparage the Callaway product, and that complied with all laws. (Doc. No.17: Rider TR ¶ 5). The plaintiff contends to have been informed that if he discounted the pre-determined prices that his account would be closed down.

On February 16, 2001, Mr. Murray was informed that Callaway's new internet policy would prohibit the plaintiff from advertising on Callaway's web-site, from selling Callaway products on its own web-site or on E-bay. On April 6, 2001, Callaway notified Mr. Murray that the Golf Shop was in violation of the new policy by offering the Steelhead X-14 Irons at a discount price, and on September 20, 2001, reiterated the violation, and revoked the plaintiff's access to the product. However, on October 19, 2001, Callaway advised Mr. Murray that the entire new product slate would once again be available. Mr. Murray knew that the price would still be pre-determined by Callaway. And finally, on April 18, 2002, Mr. Murray received a final notice stating further violations with respect to the sale of Steelhead X-14 Irons, and once again revoked the plaintiff's right to sell the product.

## ANALYSIS

1. First Cause of Action

    A. North Carolina General Statute § 75-1

The plaintiff alleges in its first cause of action that Callaway violated N.C. Gen. Stat. § 75-1 and § 75-1.1(a) by coercively restraining the plaintiff's trade and negatively affecting commerce through price-fixing. The North Carolina antitrust statute, N.C.Gen.Stat. § 75-1, provides:

> Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in the State of North Carolina is hereby declared to be illegal.

This statute is modeled after the Sherman Act, 15 U.S.C. § 1 (1971), which provides in part "Every contract . . . in restraint of trade or commerce among the several States . . . is declared to be illegal. . . ." "The body of law applying the Sherman Act, although not binding upon this Court in applying G.S. § 75-1, is nonetheless instructive in determining the full reach of that statute." Rose v. Vulcan Materials Company, 194 S.E.2d 521, 530 (N.C. 1973).

"The plain language of G.S. 75-1 requires that some concerted action in restraint of trade must be proven; unilateral action cannot violate the statute. The substantive law of trade conspiracies requires some consciousness of commitment to a common scheme." Cameron v. New Hanover Memorial Hospital, Inc., 293 S.E.2d 901, 918 (N.C. Ct. App. 1982). See also Oksanen v. Page Memorial Hosp., 945 F.2d 696, 702 (4th Cir. 1991) (citing Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 761, 104 S.Ct 1464 (1984)). The Fourth Circuit has said, "It is incontestable that 'concerted action' in restraint of trade lies at the heart of the Sherman Act section 1 violation. . . . The Supreme Court has gone so far as to say that the 'distinction between unilateral and

concerted action is *critical*. . . .' " Virginia Vermiculite v. Historic Green Springs, 307 F.3d 277, 280 (4th Cir. 2002) (citing Fisher v. Berkeley,475 U.S. 260, 266, 106 S.Ct. 1045 (1986) (emphasis added by Fourth Circuit)).

In the instant case, there was no concerted action, but mere unilateral action by Callaway in setting new policies for distribution of their product. There was no agreement, contract, or any other concerted action between the plaintiff and any third party or entity. The NPIP expressly stated that Callaway was not seeking any agreement on price with retailers:

> Callaway Golf's 2001 New Product Introduction Policy is a unilateral statement of Callaway Golf's intent. The 2001 New Product Introduction Policy is not a contract, or an offer to form a contract. Callaway Golf does not ask, and will not accept, any agreement about an account's compliance with or acceptance of this Policy. The Policy describes the terms under which Callaway Golf may, in its sole discretion, choose to sell New Products.

(Doc. No. 17: Murray Dep. Ex. 11, p. 2). Callaway Golf reiterated these terms of the NPIP in its January 25, 2001 letter to MD Products. Mr. Murray acknowledged that MD Products never made any agreement with Callaway on retail prices. (Doc. No. 17: Murray TR at 64-75). And acquiescence to the manufacturer's policy does not constitute a concerted action. Monsanto, 465 U.S. at 764, n. 9. On the contrary, "in the absence of conspiracy or monopoly, one may deal with whom one pleases." United Artists Records, Inc. v. Eastern Tape Corp.,198 S.E.2d 452, 456-57 (N.C. Ct. App. 1973).

In his response, the plaintiff argues that it was a "target of a systematic exclusion campaign initiated by the Defendant in concert with its other customers" (Doc. No. 22: Plaintiff Memo. at 16) by "facilitat[ing] gray market transactions" that "sold Callaway products to the end consumer below the NPIP stipulated price." (Id. at 15). These allegations are not "specific facts showing that there

4

is a genuine issue for trial," Fed. R. Civ. P. 56(e), and present, at best, "a mere scintilla of evidence." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). The plaintiff cites only to an obscure business card from a retailer in Mississippi containing a handwritten note providing "Callaway $50.00 off[.] Ship to cust. No Tax[.] No shipping[.]" (Doc. No. 23: Rider Dep. Ex. 2), the probative value of which is not apparent. When questioned about the gray market, Mr. Rider very clearly provides that gray market sales are prohibited by Callaway, and yet, Callaway can not prevent them. (Doc. No. 23: Rider TR at 38). As the plaintiff has presented no other evidence regarding concerted actions, the plaintiff can not sustain his §75-1 claim. Taken in a light most favorable to the plaintiff, there is no disputed fact that could lead a jury to find that Callaway was in violation of N.C. Gen. Stat. § 75-1.

    B.    North Carolina General Statute § 75-1.1(a)

The plaintiff also claims that Callaway violated North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1(a). To establish a claim under the UDTPA, a complainant must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce (3) which proximately caused injury to plaintiffs. First Atl. Mgmt. Corp. v. Dunlea Realty Co., 507 S.E.2d 56, 63 (N.C. Ct. App. 1998). The determination of whether an act or practice is an unfair or deceptive practice is a question of law for the court. Ellis v. Northern Star Co., 388 S.E.2d 127, 131 (N.C. 1990). A practice is unfair and deceptive "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Marshall v. Miller, 276 S.E.2d 397, 403 (N.C. 1981).

The plaintiff alleges that Callaway attempted to fix prices and coerce him into adherence to the NPIP by "blocking supply of all Callaway products to the Plaintiff, taking the Plaintiff off their

website, restraining Plaintiff from selling Callaway products from his own web portal and on E-bay while itself engaging in selling products on E-bay" and using the gray market transactions. (Doc. No. 22: Plaintiff Memo. at 14-15).

Regarding the allegations of coercion, there is insufficient evidence to allow the claims to proceed to a jury. Plaintiff claims to have been told that if he did not sign off on the new sales policy, Callaway would close down its account. The NPIP provides:

> It is not the purpose or intent of this Policy to restrict, coerce, or force a retailer to charge a particular price for any Callaway Golf product, including the New Products. Instead, this Policy simply describes the attributes of retail accounts that the Company will work with on New Product introductions. Callaway Golf will not sell New Products during the new product introduction period to accounts that choose not to observe Callaway Golf's 2001 New Product Introduction Policy.

(Doc. No. 17: Murray Dep. Ex. 11, p. 2). Not only did Mr. Rider testify that Callaway had never terminated an account for failing to sign the new policy notice, (Doc. No. 23: Rider TR at 31), but the plaintiff itself was not cut off completely for failing to abide by the new policy. Whereas the plaintiff claims that their entire supply of Callaway products was blocked off, (Doc. No. 22: Plaintiff Memo. 14-15), Mr. Murray testified that Callaway only took two brief actions against it pursuant to the NPIP, each involving a single model of golf club. First, Callaway stopped shipping Steelhead X-14 Irons to the plaintiff for a one-month period from September 20, 2001 to October 19, 2001, (Doc. No. 17: Murray TR at 69-70) and second, Steelhead X-14 irons in April 2002. (Id. at 70). There is no further evidence of any coercive measures taken.

Even if Callaway had told the plaintiff that its account would be terminated for failing to abide by the NPIP, there would still be no evidence that could lead a jury to find unfair and deceptive trade practices, for the action taken by Callaway was indisputably unilateral. The Supreme Court

of the United States has held:

> A manufacturer, of course, generally has a right to deal, or refuse to deal, with whomever it likes, so long as it does so independently. . . . Under *Colgate*, the manufacturer can announce its resale prices in advance and refuse to deal with those who fail to comply. And a distributor is free to acquiesce in the manufacturer's demand in order to avoid termination.

Monsanto, 465 U.S. at 761. Here, Callaway announced its new policy and prices, and refused to deal (regarding only a single model of golf club) with the plaintiff for its failure to comply. Furthermore, the decision to remove the plaintiff from Callaway's website, to restrain the plaintiff from selling the products from its own web portal and on E-bay were independent, unilateral policies in which Callaway selectively permitted certain retailers with substantial logistic capabilities to distribute gold clubs over the Internet. For the reasons stated above in the § 75-1 analysis, this Court finds no "gray market" coercive action. Accordingly, there is no need to address those accusations in the context of unfair and deceptive trade practices. Finally, the allegations of coercive measures to induce the plaintiff into fixing the retail prices of Callaway products is meaningless if a concerted action can not be established. Taken in a light most favorable to the plaintiff, there is no dispute of a genuine material fact that could lead a jury to find that Callaway was participating in unfair and deceptive trade practices.

2. Second Cause of Action

The plaintiff's second cause of action is for tortious interference with prospective economic advantage. The North Carolina Supreme Court has held that "interfere[nce] with a man's business, trade or occupation by maliciously inducing a person not to enter a contract with a third person, which he would have entered into but for the interference, is actionable if damage proximately ensues." Dalton v. Camp, 548 S.E.2d 704, 709 (N.C. 2001) (citing Spartan Equip. Co. v. Air

7

Placement Equip. Co. 140 S.E.2d 3, 11 (N.C. 1965) and <u>Cameron v. New Hanover Mem'l Hosp. Inc.</u>, 293 S.E.2d 901, 917 (N.C. Ct. App. 1982)).

Essential to this claim is identifying a contract that Callaway induced a third party to refrain from entering. <u>Daimlerchrysler Corp. v. Kirkhart</u>, 561 S.E.2d 276, 285-86 (N.C. Ct. App. 2002); <u>Burgess v. Busby</u>, 544 S.E.2d 4, 10 (N.C. Ct. App. 2001); <u>Cameron</u>, 293 S.E.2d at 917. The plaintiff has failed to allege that Callaway induced a specific third party to refrain from entering into a contract with the plaintiff without justification. At his deposition, Mr. Murray admitted that he could not identify the golfers that he would have sold golf clubs to absent Callaway's activities. (Doc. No. 17: Murray TR at 81). The plaintiff argues, without supporting authority, that it is not necessary or reasonable to require it to identify any particular contract interference. (Doc. No. 22: Plaintiff Memo. at 21).

Even if the plaintiff is not required to identify a specific contract with which Callaway interfered, there is no evidence of malicious conduct. North Carolina courts have provided that plaintiffs must show that a defendant "acted with malice and for a reason not reasonably related to the protection of a legitimate business interest. . . ." <u>Cameron</u>, 293 S.E.2d at 916, (citing <u>Smith v. Ford Motor Co.</u>, 221 S.E.2d 282, 296 (N.C. 1976)). The plaintiff argues that Callaway's malicious action is evidenced by restricting the plaintiff from selling any non-brand name golf equipment, yet cites only to Mr. Murray's deposition. (Doc. No. 17: Murray TR at 36:19-37). The plaintiff fails to cite any legal authority providing that such action constitutes malice. The plaintiff also argues that the enforcement of the NPIP, removing the plaintiff from the Callaway web-site, and restraining the plaintiff from selling Callaway products from its own web portal constitute a malicious interference with contractual relations. The Court has determined above that these actions constituted legitimate,

unilateral conduct, and as such, sees no unlawful interference between the plaintiff and its customers. Therefore, in a light most favorable to the plaintiff, the Court finds no genuine issue of material fact in dispute as to the second cause of action.

## CONCLUSION

Even reading the facts in a light most favorable to the plaintiff, the Court finds no evidence sufficient to withstand the defendant's motion for summary judgment.

**IT IS, THEREFORE, ORDERED** that the defendant's motion for summary judgment (Doc. No. 13) be **GRANTED**, and this matter be **DISMISSED** in its entirety.

Signed: September 28, 2006

Robert J. Conrad, Jr.
Chief United States District Judge